IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAIME B. MERCED**, an individual, | Case No. 3:22-cv-01160-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **UNITED STATES OF AMERICA**, | |
| Defendant. | |

Charles Robinowitz, 1211 SW Fifth Ave., Ste. 2323, Portland, OR 97205, and Edward M. Bull III, Brodsky Micklow Bull & Weiss, 955 Harbor Island Dr., Ste. 130, San Diego, CA 92101. Attorneys for Plaintiff.

Frank J. Anders, U.S. Department of Justice, 450 Golden Gate Ave., Rm. 5395, San Francisco, CA 94102. Attorney for Defendant.

**IMMERGUT, District Judge.**

This matter comes before this Court on Defendant's Motion for Summary Judgment, ECF 21. Plaintiff was injured while employed as a seaman aboard a vessel owned by Defendant and brings claims for negligence under the Jones Act, unseaworthiness, and maintenance and cure. Defendant moves for summary judgment, arguing it was not negligent and that its vessel

PAGE 1 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

was not unseaworthy. Defendant also argues that it has paid all maintenance and cure owed to Plaintiff. Genuine disputes of material fact remain as to Plaintiff's negligence and unseaworthiness claims. This Court accordingly DENIES IN PART Defendant's motion as to those claims. Because Plaintiff has conceded an essential aspect of a maintenance and cure claim, the motion is GRANTED IN PART as to that claim. Defendant also moves to exclude the report of an expert retained by Plaintiff. That motion is DENIED.

## STANDARDS

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing Fed. R. Civ. P. 56(a)). Material facts are those which might affect the outcome of the suit, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party meets its burden, the opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1997). However, at this stage, this Court does not weigh the evidence or assess

the credibility of witnesses, but instead simply determines whether there is a genuine factual

issue for trial. *See In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).

"Reasonable doubts as to the existence of [a] material factual issue are resolved against

the moving part[y] and inferences are drawn in the light most favorable to the non-moving

party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). However, the

nonmoving party must make a "sufficient showing on an essential element of her case with

respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). "When the nonmoving party relies only on its own affidavits

to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual

data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

Summary judgment is permitted "only where . . . it is quite clear what the truth is." *Poller v.

Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962).

## BACKGROUND

Because Plaintiff concedes that Defendant has paid all maintenance and cure owed to

Plaintiff, Joint Statement of Agreed and Disputed Facts ("JSADF"), ECF 19 ¶¶ 37-38, the

following sets forth only the factual background relevant to Plaintiff's Jones Act negligence and

unseaworthiness claims.

Plaintiff Jaime Merced was injured on August 10, 2020, while working as a seaman

aboard the SS Pacific Tracker, a vessel owned by Defendant. JSADF, ECF 19 ¶ 1. At the time

of the accident, the vessel was moored in Portland, Oregon. JSADF, ECF 19 ¶ 3.

On the morning of August 10, Plaintiff was tasked with replacing a cover plate on top of

a vent aboard the vessel. JSADF, ECF 19 ¶ 15. This task required Plaintiff to ascend a ladder to

tighten the bolts that secure the cover to the vent. JSADF, ECF 19 ¶ 18. The vent has a fixed

ladder attached to one side. JSADF, ECF 19 ¶ 14. To facilitate Plaintiff's task that morning,

Plaintiff's supervisor, Bosun Kevin Kellum, placed a portable A-frame ladder next to the vent, to

the right-hand side of the fixed ladder. JSADF, ECF 19 ¶¶ 11, 17.

Plaintiff ascended the fixed ladder and stood on its third rung, 36 inches off the deck, to

begin screwing in the bolts. JSADF, ECF 19 ¶ 18. At approximately 9:45 AM, Plaintiff

encountered some difficulty screwing in a bolt. JSADF, ECF 19 ¶¶ 20-21. Bosun Kellum saw

this and told Plaintiff to stop working and to go get coffee with him (the crew of the ship

routinely took a morning coffee break at 10 AM). JSADF, ECF 19 ¶ 21. Bosun Kellum then

started walking away, though the parties dispute how far away he moved from the ladder.

JSADF, ECF 19 ¶ 22.

Plaintiff continued working and, at 9:48 AM, stepped with his right foot onto the adjacent

portable A-frame ladder. JSADF, ECF 19 ¶ 24. As Plaintiff stepped onto the ladder, it fell over.

JSADF, ECF 19 ¶ 24. Plaintiff fell to the deck on top of it, sustaining injuries to at least his right

wrist. JSADF, ECF 19 ¶¶ 25-26. One week after the accident, Plaintiff was diagnosed with

additional injuries to his left shoulder, left elbow, and right knee. JSADF, ECF 19 ¶ 28.

Plaintiff filed suit, bringing claims for negligence under the Jones Act, 46 U.S.C.

§ 30104, and for unseaworthiness and maintenance and cure under maritime common law. First

Amended Complaint ("FAC"), ECF 7 at 5-8.

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's Jones Act negligence and

unseaworthiness claims. Summary judgment "in a negligence action is generally disfavored" and

is only appropriate "where the facts are essentially undisputed and only issues of law remain."

*Commonwealth Utils. Corp. v. Goltens Trading & Eng'g PTE Ltd.*, 313 F.3d 541, 546 (9th Cir.

PAGE 4 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2002) (quoting *Camacho v. Du Sung Corp.*, 121 F.3d 1315, 1317 (9th Cir. 1997)). This ordinary rule is stronger in a Jones Act negligence case, where a lower quantum of the evidence is necessary to support a finding of negligence. *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993). The Ninth Circuit has accordingly cautioned courts to "exercise special care in considering summary judgment in Jones Act cases." *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981).

Viewed in a light most favorable to Plaintiff, and without making any credibility determinations, this Court concludes that the cognizable evidence establishes genuine issues of fact as to negligence and seaworthiness. There are triable issues of material fact as to whether a practice of side-stepping from fixed to portable ladders and the use of the unsecured portable ladder involved in this incident was negligent or created an unseaworthy condition. Summary judgment is therefore inappropriate on these claims.

Plaintiff conceded in the Joint Statement of Agreed and Disputed Facts that "Plaintiff has reached Maximum Medical Improvement for all injuries alleged in this lawsuit" and that Defendant paid for all related medical expenses. JSADF, ECF 19 ¶¶ 36-38. This Court will therefore grant summary judgment to Defendant on Plaintiff's claim for maintenance and cure.

**A.  Several Issues of Material Fact Preclude Summary Judgment.**

On Plaintiff's Jones Act and unseaworthiness claims, there are genuine issues of material fact as to whether Defendant was negligent or created an unseaworthy condition, and whether such negligence or unseaworthiness caused Plaintiff's injuries. This Court accordingly denies Defendant's motion for summary judgment on these issues.

The parties disagree as to the following material facts:

(1) Whether "side-stepping" from fixed to portable ladders was a routine practice aboard the vessel. JSADF, ECF 19 ¶ 40.

(2) Whether Plaintiff was previously told not to side-step. JSADF, ECF 19 ¶ 40.

(3) Whether portable ladders used for this work were always secured to an adjacent railing. JSADF, ECF 19 ¶ 41.

(4) Whether a Job Hazard Analysis was conducted the morning of the accident. JSADF, ECF 19 ¶ 46.

(5) What Bosun Kellum said to Plaintiff immediately before the accident. JSADF, ECF 19 ¶ 43.

(6) Where Bosun Kellum was located at the time of the accident. JSADF, ECF 19 ¶ 42.

(7) Where the portable ladder was located at the time of the accident. JSADF, ECF 19 ¶ 44.

(8) Whether it was reasonable under the circumstances for Plaintiff to side-step from the fixed ladder to the portable ladder. JSADF, ECF 19 ¶ 43.

(9) Whether the work procedures and equipment used to work on the vents were adequate and whether safer alternatives were available. JSADF, ECF 19 ¶ 50.

(10) What Bosun Kellum said to Defendant after the incident. JSADF, ECF 19 ¶ 45.[1]

(11) Whether Plaintiff's knee and shoulder injuries were caused by his fall. JSADF, ECF 19 ¶ 39.

---

[1]     Defendant argues that these statements would be hearsay. Reply to Opp'n to MSJ, ECF 34 at 12. But hearsay may be considered at the summary judgment stage, so long as the information therein may be presented in an admissible form either through the speaker at trial or through an exception to hearsay. *See Garris v. Fed Bureau of Investigation*, 937 F.3d 1284, 1293 (9th Cir. 2019).

(12) Plaintiff's damages and possible mitigation. JSADF, ECF 19 ¶¶ 48-49.

Taken collectively, these disputed facts preclude summary judgment on either the Jones Act or unseaworthiness claims.

### 1.   Jones Act

The Jones Act creates a cause of action in negligence for a seaman who suffers personal injury in the scope of his employment. *See Ribitzki v. Canmar Reading & Bates, Ltd.*, 111 F.3d 658, 662 (9th Cir. 1997); 46 U.S.C. § 13104. A Jones Act claim has four elements: (1) an employer's duty to provide a safe work environment to its seamen, (2) breach of that duty, (3) the employer's awareness of the unsafe condition, and (4) a causal link, however slight, between the breach and the seaman's injury. *Id.* at 662-69. The parties agree that Plaintiff is a seaman, JSADF, ECF 19 ¶ 1, and that Defendant therefore owes him a duty of reasonable care to provide a safe work environment. The parties dispute whether Defendant breached that duty, whether Defendant knew or should have known of the dangerous condition, and whether there is any causal link between Defendant's breach and Plaintiff's injury.

The quantum of evidence necessary to sustain a finding of Jones Act negligence is less than is required for common law negligence. The applicable standard of care for both employer and employee is "ordinary prudence under the circumstances." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997) (en banc). But the causation standard is lower than applicable to an ordinary negligence claim. The Jones Act incorporates the standard of negligence applicable to railroad employees under the Federal Employers' Liability Act, which was intended "to provide liberal recovery for injured workers." *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958). Plaintiff accordingly must show only that "employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought."

*Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957); *see also Havens*, 996 F.2d at 218

(applying this standard to a Jones Act negligence claim); *Lies*, 641 F.2d at 770 (same). This is

"often described as a featherweight causation standard." *Ribitzki*, 111 F.3d at 664. Nevertheless,

Plaintiff must still "demonstrate some causal connection between a defendant's negligence and

[his] injuries." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994).

Applying this standard, this Court concludes that the questions of material fact regarding

Defendant's alleged breach of its duty to provide a safe working environment, Defendant's

awareness of its breach, and the causal link between that breach and Plaintiff's injury are all

questions to be resolved at trial. Courts are obligated to "exercise special care in considering

summary judgment in Jones Act cases," because summary judgment is disfavored in Jones Act

cases and there is a "very low threshold for submission to the jury." *Martinez v. Korea Shipping

Corp.*, 903 F.2d 606, 609 (9th Cir. 1990).

Here, Defendant says Plaintiff unexpectedly side-stepped to a portable ladder that he

knew was unsupported and unsecured. MSJ, ECF 21 at 20-21. Plaintiff contends that side-

stepping was common practice aboard the vessel and that the portable ladders were always

secured to the rail, meaning he did not know it was unsecured. Opposition to MSJ ("Opp'n"),

ECF 30 at 17-18. Defendant argues that Bosun Kellum had no duty to hold the ladder because he

had already ordered Plaintiff to stop working and join him for coffee. MSJ, ECF 21 at 27-28.

Plaintiff argues that Bosun Kellum was standing "close" to the portable ladder and should have

been holding it while Plaintiff attempted to "thread one more bolt." Opp'n, ECF 30 at 17-18.

Both parties provide evidence in support of their versions of events.[2] *See* Opp'n, ECF 30 at 4-7. Viewing this evidence as a whole and in the light most favorable to Plaintiff, a reasonable juror could find that Defendant breached its duty to provide a reasonably safe working environment and was at least partly at fault for the accident. Determining whether Defendant exercised the requisite level of care presents a question of material fact. *See Christensen v. Ga.-Pac. Corp.*, 279 F.3d 807, 815 (9th Cir. 2002) (concluding that whether a party breached its duty of care "is a question of fact for trial").

Causation is likewise a quintessential dispute of material fact that should be resolved at trial. *See Crowley Marine Servs., Inc. v. Maritrans, Inc.*, 530 F.3d 1169, 1177 (9th Cir. 2008) (noting allocation of fault is a "fact-intensive decision"); *Lies*, 641 F.2d at 770 (noting causation is "generally a question of fact"). This Court concludes that a reasonable jury could find that Defendant's alleged negligence played at least "the slightest" part in causing Plaintiff's injury. *See Ribitzki*, 111 F.3d at 664. Given that "featherweight" causation standard used in Jones Act negligence claims "allows a seaman to survive summary judgment by presenting even the slightest proof of causation," *id.*, it would be particularly inappropriate to grant summary judgment on causation at this stage.

---

[2]     Defendant argues that at least some of Plaintiff's evidence is irrelevant because OSHA regulations do not apply to most vessels. MSJ, ECF 21 at 32-33. Defendant is correct that a violation of OSHA regulations, unlike a violation of statute or Coast Guard regulation, would not give rise to liability per se. *See* 29 U.S.C. § 653(b)(4); *cf MacDonald v. Kahikolu Ltd.*, 442 F.3d 1199, 1203 (9th Cir. 2006) (explaining that "the common-law concepts of foreseeability and risk of harm are not applicable" in cases where a violation of statute or Coast Guard regulation causes a seaman's injury). OSHA standards may nonetheless be admitted as evidence of the applicable standard of care. *Robertson v. Burlington N. R.R. Co.*, 32 F.3d 408, 410 11 (9th Cir. 1994).

Defendant suggests that the summary judgment standard is relaxed in a case that is not set for a jury trial. MSJ, ECF 21 at 16-17. Plaintiff disputes Defendant's characterization of the applicable standard. Opp'n, ECF 30 at 12-14. But whether or not this Court has greater latitude to grant summary judgment in a case that will not be tried to a jury, it will not exercise that latitude in this case.[3] Under the circumstances of this case, this Court concludes that it would be better to proceed to a full trial on this claim because a fuller record will afford a more substantial basis for decision. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Anderson v. Hodel*, 899 F.2d 766, 770-71 (9th Cir. 1990). This Court will also be able to make credibility determinations and weigh conflicting evidence at trial, two functions that will be essential to resolving this case and which would be inappropriate on summary judgment.

### a. Defendant's Sham-Declaration Allegations

In very limited circumstances, this Court may find that a party's declaration or affidavit is a "sham" and disregard it on summary judgment. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The sham affidavit rule prevents parties from manufacturing disputes of material fact by submitting an affidavit that undisputably contradicts the party's prior deposition testimony. *Id.* To find an affidavit is a sham, the district court must make a factual determination that there is an inconsistency between the party's deposition testimony and its subsequent affidavit that is both clear and unambiguous. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

---

[3] Defendant argues that this Court "itself may draw inferences and grant summary judgment based on those inferences." MSJ, ECF 21 at 17. But as the moving party, this Court must draw all reasonable inferences against Defendant. *See Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Defendant argues that a portion of Plaintiff's declaration in opposition to summary judgment is a "sham" because Plaintiff's declaration states that he and his co-workers "always tied off the step ladder to the rail" and "did not hold the step ladder for each other" while working on the vents. Plaintiff Decl., ECF 31 ¶¶ 3-4. Defendant contends that these portions of the declarations contradict Plaintiff's deposition, at which he stated "somebody has to be there holding it" while working on the ladder. Reply to Opp'n to MSJ ("Reply"), ECF 34 at 8.

In evaluating a motion for summary judgment, this Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Addisu*, 198 F.3d at 1134. This Court will not weight disputed evidence or engage in credibility determinations in ruling on summary judgment. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).

Although there may be some apparent tension between Plaintiff's deposition testimony and his declaration, there are not "clear and unambiguous" contradictions such that the sham affidavit rule should apply. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). Mindful that, on summary judgment, this Court must construe all disputed facts in favor of Plaintiff, any inconsistencies in Plaintiff's accounts of the accident are issues of credibility for trial.

### 2.  Unseaworthiness

The doctrine of unseaworthiness provides a private right of action for a seaman who is injured by an unseaworthy ship. *Herman v. Tidewater Pac., Inc.*, 160 F.3d 1239, 1242 (9th Cir. 1998). An unseaworthiness claim has four elements: (1) seaman status triggering the warranty of seaworthiness; (2) an injury arising from the condition of the ship or its crew; (3) the unseaworthiness of that condition; and (4) proximate causation between the unseaworthy condition and the injury. *Ribitzki*, 111 F.3d at 664. An unseaworthiness claim demands a higher

PAGE 11 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

degree of causation than a Jones Act negligence claim, because it relies on traditional proximate cause analysis rather than the law of causation developed under the Federal Employers' Liability Act. *Lies*, 641 F.2d at 774; *cf. Rogers v. Mo. Pac. Ry. Co.*, 352 U.S. 500, 507-08 (1957). This higher standard of causation is accompanied by a strict liability rule: An unseaworthiness claim does not require showing that the shipowner had actual or constructive knowledge of the unseaworthy condition before the shipowner can be held liable. *Ribitzki*, 111 F.3d at 664. Determining unseaworthiness is a fact-specific inquiry, *id.*, because unseaworthiness may arise from a variety of circumstances, including a defective physical condition, even if temporary; a failure to properly maintain the ship or its appurtenances; an unfit or insufficient crew; or an improper method of operation. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971).

As with the Jones Act negligence claim, questions of material fact regarding the unseaworthiness of the condition and proximate cause between the condition and Plaintiff's injury prevent summary judgment. The question of unseaworthiness is ordinarily left to the factfinder, and "only in a rare case can a vessel be unseaworthy as a matter of law." *Johnson v. Bryant*, 671 F.2d 1276, 1279 (11th Cir. 1982); *see also Jordan v. United States Lines, Inc.*, 738 F.2d 48, 50 (1st Cir. 1986). This case does not present one of the rare exceptions to the general rule.

There can be no dispute that the warranty of seaworthiness extended to Plaintiff, or that his injuries resulted in some way from a piece of the ship's equipment. Defendant disputes the last two elements of unseaworthiness: whether the ship was unseaworthy and whether that unseaworthy condition caused Plaintiff's injury.

Under the third element of seaworthiness, a seaman is entitled to a workspace that is reasonably fit for its intended use. *See Ribitzki*, 111 F.3d at 664-65. In this case, Plaintiff alleges

PAGE 12 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

that the portable ladder was not seaworthy because it used inappropriate footpads for the deck surface. Opp'n, ECF 30 at 21-22. Plaintiff has also identified an alternative to the use of the ladder, namely scaffolding, that may have prevented the type of injury he suffered. *Id.* at 20. Finally, Plaintiff argues that the methods of work employed aboard the vessel, including the practice of side-stepping, constituted an unseaworthy condition. *Id.* Plaintiff argues that these features of the ship combined to cause his injury. *Id.* at 20-21.

Defendant argues that Plaintiff's theories of unseaworthiness are unpersuasive. *See* MSJ, ECF 21 at 30-32. Defendant contends that there is no evidence that the condition of the portable ladder caused the fall, that conditions were sunny and dry on the morning of the accident, and that the ladder toppled over rather than slipped. *Id.* at 31-32. Defendant also contends that Plaintiff has not shown that scaffolding would be safer than the ladder, or that the lack of scaffolding amounted to an unsafe condition. *Id.* at 30-31. Finally, Defendant argues that whether a practice of side-stepping existed aboard the vessel is irrelevant because this ladder, unlike other ladders, was unsecured. Reply, ECF 34 at 6-7.

On the fourth element, proximate cause is established by "showing that the unseaworthy condition was a substantial factor in causing the injury." *Ribitzki*, 111 F.3d at 665. Defendant again argues that Plaintiff was the sole cause of his accident. MSJ, ECF 21 at 18-19.

Defendant's arguments may tend to support Defendant's view that the vessel was seaworthy and that Plaintiff was the cause of his own injuries, but on summary judgment they do not bar Plaintiff's claim as a matter of law. Making all inferences in favor of Plaintiff, a reasonable jury could conclude that the ladder used, in combination with the practice of side-stepping, was not "reasonably fit for its intended use" and that Plaintiff's injuries were at least partially attributable to Defendant. *Ribitzki*, 111 F.3d at 664; *see Knight v. Alaska Trawl*

PAGE 13 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Fisheries, Inc.*, 154 F.3d 1042, 1047 (9th Cir. 1998) (applying the rule of comparative fault in a

seaman's unseaworthiness action). It is not this Court's role on summary judgment to weigh

conflicting evidence or make credibility determinations. Plaintiff is entitled to present his theory

of unseaworthiness at trial.

## B. Superseding Cause

Defendant seeks to assert the affirmative defense of superseding cause, arguing that

Plaintiff's claims should be dismissed as a matter of law because Plaintiff's "unforeseeable and

reckless actions were the superseding and intervening cause of the accident that would break any

chain of causation." MSJ, ECF 21 at 33. Specifically, Defendant argues that "it was not

foreseeable that Plaintiff would . . . side-step from the fixed ladder to an unsupported portable

ladder." MSJ, ECF 21 at 34. To succeed on this affirmative defense, Defendant must show that

no reasonable factfinder could decide that Plaintiff's actions were foreseeable. Defendant has not

carried its burden.

"The doctrine of superseding cause is applied where the defendant's negligence in fact

substantially contributed to the plaintiff's injury, but the injury was actually brought about by a

later cause of independent origin that was not foreseeable." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517

U.S. 830, 837 (1996) (omission omitted). The new independent cause breaks the chain of

proximate causation between the defendant's negligence and the injury, "operat[ing] to cut off

the liability of an admittedly negligent defendant." *Id.* at 837-38 (citation omitted). Superseding

cause, like other issues of proximate causation, is a factual question that is typically best resolved

after a full presentation of evidence. *See id.* at 840-41 ("The issues of proximate causation and

superseding cause involve application of law to fact, which is left to the factfinder . . . .").

Defendant argues that Plaintiff acted recklessly and unsafely by side-stepping to the portable ladder, that this action alone was the superseding cause of his injuries, and that the doctrine of superseding cause should therefore cut off any liability on the part of Defendant. Plaintiff opposes, arguing that the doctrine of superseding cause is applicable only to intervening acts of third parties, not the plaintiff himself. Plaintiff is incorrect. In *Exxon Co., U.S.A. v. Sofec, Inc.*, the U.S. Supreme Court held that the plaintiff's own conduct may be a superseding cause. *See* 517 U.S. at 840-41 (declining to reconsider findings that plaintiff's "extraordinary negligence was the sole proximate cause of [its] injury"). Plaintiff also argues that his fault, if any, should be addressed through the doctrine of comparative fault rather than superseding cause. But as the *Sofec* Court made clear, the doctrine of superseding cause is a facet of proximate cause, not the allocation of damages. 517 U.S. at 837-38.

That all said, Defendant has not met its burden to win on summary judgment. Although Defendant argues that Plaintiff has "waived" the superseding-cause argument because his arguments are unpersuasive, Reply, ECF 34 at 15, a defendant moving for summary judgment on an affirmative defense must nonetheless still "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Defendant has not carried that burden here.

The doctrine of superseding cause only applies where the plaintiff's injury "was actually brought about by a later cause of independent origin that was not foreseeable." *Exxon Co.*, 517 U.S. at 837. Section 442 of the Restatement (Second) of Torts sets out several factors that define when an intervening force is a superseding cause, each of which suggests that Plaintiff's purported negligence should not be considered a superseding cause. The harm that occurred was not "different in kind" from what Defendant's negligence would otherwise have caused.

PAGE 15 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RESTATEMENT (SECOND) OF TORTS § 442(a) (Am. L. Inst. 1965). Plaintiff's theory of the case is that Defendant was negligent in failing to provide a safe working environment. If proven, this negligence would be expected to result in the same harm—a fall resulting in injury—that resulted from Plaintiff's actions. There is likewise nothing "extraordinary" about what happened here, *id.* § 442(b), and nothing to suggest Plaintiff's actions were "operating independently" of the risk created by Defendant's purported negligence. *Id.* § 442(c). Even if Plaintiff's actions were negligent, they were not "wrongful." *Id.* § 442(e). And while Plaintiff is incorrect in asserting that his own conduct may *never* be a superseding cause, the fact that the intervening force was not caused by a "third person's act" does weigh against considering it a superseding cause. *Id.* § 442(d), (f).

This Court cannot conclude as a matter of law that Plaintiff's actions (1) were independent of Defendant's alleged negligence, (2) caused him to suffer a different type of harm than would have resulted from Defendant's alleged negligence, or (3) were so unforeseeable as to amount to a superseding cause. Plaintiff's alleged negligence did not operate independently of Defendant's alleged negligence; under Plaintiff's theory of the case, Defendant's failure to provide a safe work environment enabled and encouraged Plaintiff's actions. Likewise, the harm caused by Plaintiff's alleged negligence—falling from the ladder and suffering injuries—is the same harm as would be expected to result from Defendant's alleged negligence.

Finally, even if Defendant were negligent in stepping to the portable ladder, an intervening negligent act does not supersede the original actor's negligence so long as those negligent acts are reasonably foreseeable. *See, e.g.*, *Farr v. NC Machinery Co.*, 186 F.3d 1165, 1168-69 (9th Cir. 1999). Here, Plaintiff's actions were not so unforeseeable as to create a break in the chain of causation. "[P]roximate cause is a means of cutting off liability for consequences

that are so far removed from the conduct at issue that there is no justification for imposing liability." *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 815 (9th Cir. 2002). Particularly in light of the low standard for causation in Jones Act claims, *see Rogers v. Missouri Pac. Ry. Co.*, 352 U.S. 500, 506 (1957), Defendant's actions were not so far removed from the accident as to justify cutting off all potential liability. Defendant's argument, as Plaintiff acknowledges, undoubtedly bears on apportionment of fault. If Plaintiff was negligent in side-stepping to the portable ladder, his damages would be reduced in accordance with the doctrine of comparative fault. *See Knight v. Alaska Trawl Fisheries, Inc.*, 154 F.3d 1042, 1047 (9th Cir. 1998). But Plaintiff was not so negligent as to make his actions a superseding cause as a matter of law.

## C.  Maintenance and Cure

Maritime law entitles a seaman who falls ill or becomes injured "while in the service of a ship" to receive "maintenance and cure" from his employer. *Lipscomb v. Foss Mar. Co.*, 83 F.3d 1106, 1109 & n.1 (9th Cir. 1996). This obligation continues only until the seaman "reaches maximum medical recovery," *Vaughn v. Atkinson*, 369 U.S. 527, 531 (1962), defined as the point "where it is probable that further treatment will result in no betterment in the claimant's condition," *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996), either because "the seaman is well or his condition is found to be incurable." *Permanente S. S. Corp. v. Martinez*, 369 F.2d 297, 298 (9th Cir. 1966). Ambiguities or doubts as to the application of maintenance and cure are resolved in favor of the seaman. *See Warren v. United States*, 340 U.S. 523, 530 (1951).

Plaintiff's complaint asserts a claim for maintenance and cure, seeking "all unpaid maintenance and cure, if any, that exist at the time of trial." FAC, ECF 7 ¶ 7-8. Defendant moves for summary judgment on this claim, arguing that it has already paid all maintenance and cure

due to Plaintiff. MSJ, ECF 21 at 35. Plaintiff conceded in the Joint Statement of Agreed and Disputed Facts that "Plaintiff has reached Maximum Medical Improvement for all injuries alleged in this lawsuit" and that Defendant paid for all related medical expenses. JSADF, ECF 19 ¶¶ 36-38. Defendant's obligation to furnish maintenance and cure ended when Defendant's injuries reached maximum medical cure.

Plaintiff contends that his knee injury has not yet reached "maximum recovery," entitling him to maintenance and cure until he receives additional treatment to his knee. Opp'n, ECF 30 at 25-26. To the extent Plaintiff's briefing argues he has not reached maximum cure, his assertions are contradicted by the agreed facts in the Joint Statement. "A party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda," *S.A. Empresa v. Walter Kidde & Co.*, 69 F.2d 1235, 1238 (9th Cir. 1982), particularly when those assertions contradict the joint statement, which Plaintiff's counsel signed, that serves as "the basic evidentiary record for any dispositive motion." Case Management Order, ECF 17 at 3. Defendant is therefore entitled to summary judgment on the maintenance and cure claim.

**D.  Motion to Strike**

Defendant includes in its reply in support of its motion for summary judgment a motion to strike the expert report of Captain Pinetti, an expert retained by Plaintiff. Reply, ECF 34 at 20-25. This motion is procedurally improper. Both the Local Rules of this District and the case management order issued in this case make clear that a motion may not be combined with any other motion or reply. Case Management Order, ECF 17 at 3; Local Rule 7-1(b). Nevertheless, Defendant's motion occupies a separate section of its brief, Defendant has complied with the certificate of conferral requirement, Reply, ECF 34 at xi, and Plaintiff will not be prejudiced because he has had the opportunity to file a sur-reply. ECF 38. Because this Court prefers to

decide cases on their merits, it will proceed to the merits of Defendant's motion. The motion is denied.

Expert testimony is admissible if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The proponent of the expert has the burden of proving admissibility by a preponderance of the evidence. *Lust ex rel. Lust v. Merrell Down Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). As a general rule, "[s]haky but admissible evidence is to be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). The trial court will serve as a gatekeeper only to "screen the jury from unreliable nonsense opinions," not to "exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). And the importance of this Court's gatekeeping function is substantially diminished "when the gatekeeper is keeping the gate only for" herself. *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018).

Plaintiff offers Captain Randall Pinetti as a "marine safety expert." Opp'n, ECF 30 at 18. Captain Pinetti states in his declaration that he has over 45 years of experience in the maritime industry. Declaration of Captain Randall Pinetti, ECF 33 at 1-2. Captain Pinetti's expert report sets forth his analysis of the accident, explains relevant maritime safety standards, and concludes that Defendant was partially responsible for the accident. ECF 33-1.

Defendant first argues that Captain Pinetti's report is irrelevant because the use and function of ladders is a matter of common knowledge. Reply, ECF 34 at 20-22. Defendant is correct that expert testimony is not relevant when it addresses matters that are not "beyond the common knowledge of the average layperson." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001). But this is not an exacting inquiry. The Ninth Circuit has counseled that courts

"must be cautious not to overstate the scope of the average juror's common understanding and knowledge." *United States v. Finley*, 301 F.3d 1000, 1013 (9th Cir. 2002); *see also Lawson v. Trowbridge*, 153 F.3d 368, 376 (7th Cir. 1998) ("A trial court is not compelled to exclude an expert just because the testimony may, to a greater or lesser degree, cover matters that are within the average juror's comprehension." (internal alterations and quotation marks omitted)).

While the use of ladders in general is a matter of common knowledge, their use aboard a vessel—and, in particular, appropriate types of ladders, appropriate methods of securing ladders, and appropriate ways for a seaman to move between ladders—is not common knowledge. Neither are the broader maritime safety standards and work practices that may inform the duty of care applicable in this case. Captain Pinetti bases his opinion on his "experience as a working ship Pilot for 27.5 years and a USCG licensed Master of Unlimited Tonnage upon Oceans for 36 years." Pinetti Expert Report, ECF 33-1 at 10. "To exclude an expert report simply because it also employs common sense—in addition to expertise—is not supported by the caselaw." *Munoz v. PHH Mortgage Corp.*, 478 F. Supp. 3d 945, 970 (E.D. Cal. 2020).

This Court declines to exclude Captain Pinetti's report at this time because it may assist this Court in determining whether Defendant complied with the appropriate duty of care. Defendant's objections go to the weight this Court should afford Captain Pinetti's testimony, not its admissibility. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th Cir. 1998). If Plaintiff seeks to call Captain Pinetti at trial or introduce his report, this Court will determine at that time the appropriate weight to afford Captain Pinetti's testimony and will disregard any evidence that it ultimately determines is not sound. *See Ohler v. United* States, 529 U.S. 753, 758 n.3 (2000) (noting evidentiary rulings are preliminary and that this Court "may always change [its] mind during the course of a trial"). To the extent Defendant objects to Captain Pinetti's

conclusions, whether founded on "common sense" or otherwise, Defendant may present rebuttal evidence or cross-examine Captain Pinetti on those issues at trial.

Defendant also points to what it characterizes as Captain Pinetti's "fail[ure] to consider numerous highly probative and relevant undisputed facts" as a reason to exclude his report. Reply, ECF 34 at 22. An expert's reliance on disputed facts does not provide a reason to exclude that expert's testimony unless the expert's factual assumptions are "indisputably wrong." *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)). Defendant's arguments go to the weight of Captain Pinetti's opinions, not their admissibility. Cross-examination, not a motion to strike, is the proper way to "negate the facts or factual assumptions underlying an expert's opinion." *Id.* Counsel should address any perceived errors or omissions in Captain Pinetti's report by presenting rebuttal evidence or through cross-examination.

## CONCLUSION

Having reviewed the relevant briefing and record, this Court hereby finds and ORDERS that Defendant's Motion for Summary Judgment, ECF 21, is GRANTED IN PART and DENIED IN PART as set forth above. The motion to strike embedded in Defendant's Reply, ECF 34, is DENIED.

**IT IS SO ORDERED.**

DATED this 20th day of September, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge