IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAIME B. MERCED**, | Case No. 3:22-cv-01160-IM |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| **UNITED STATES OF AMERICA**, | |
| Defendant. | |

Kurt Micklow and Edward M. Bull, Brodsky Micklow Bull & Weiss, 955 Harbor Island Drive, Suite 130, San Diego, CA, 92101, and Charles Robinowitz, 1211 SW Fifth Avenue, Suite 2323, Portland, OR 97204. Attorneys for Plaintiff.

Frank J. Anders, Eric Kaufman-Cohen and Susan F. Shapiro, U.S. Department of Justice, 450 Golden Gate Avenue, Room 7-5395, San Francisco, CA 94102. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff Jaime Merced alleges that he fell and was injured on the morning of August 10, 2020, while working as a Jones Act seaman aboard the SS Pacific Tracker, a vessel owned by Defendant United States. *See* First Amended Complaint ("FAC"), ECF 7 ¶¶ 5, 9. Plaintiff alleges that he was working alongside the vessel's bosun to replace a cover on a vent when he stepped

PAGE 1 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

from a fixed ladder attached to the vent to an adjacent portable ladder, which toppled over. *Id.* ¶ 9.

Plaintiff sued Defendant for negligence under the Jones Act, 46 U.S.C. § 30104, and for unseaworthiness under the general maritime law. FAC, ECF 7 ¶¶ 14, 19. Plaintiff seeks damages for lost earnings and earning capacity, medical expenses, and pain and suffering. *Id.* ¶¶ 15–16. On September 20, 2024, this Court granted summary judgment to Defendant on Plaintiff's claim for maintenance and cure, but allowed his claims for Jones Act negligence and unseaworthiness to proceed to trial. ECF 44.

The matter was tried to the Court, sitting without a jury, from November 19, 2024, to November 22, 2024, ECF 59–62, and on December 17, 2024, ECF 65. Closing arguments were held on January 8, 2025, ECF 68, and the parties filed proposed findings of fact and conclusions of law on January 31, 2025, ECF 70–71.

Having considered the evidence presented at trial, the exhibits admitted into evidence, and the record, the Court hereby enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). To the extent that any findings of fact may be construed as conclusions of law, the Court adopts them as such. To the extent that any conclusions of law constitute findings of fact, the Court adopts them as such.

## FINDINGS OF FACT

**A. The Plaintiff**

1. Plaintiff Jaime Merced was a Jones Act seaman employed as an able-bodied seaman aboard the SS PACIFIC TRACKER at the time of his accident and injury. Joint Statement of Agreed and Disputed Facts ("Agreed Facts"), ECF 19 ¶¶ 1, 6.

2. Plaintiff worked since 2005 as a union seaman aboard various vessels, including several assignments as an able seaman aboard the PACIFIC TRACKER in 2019 and 2020. Agreed Facts,

PAGE 2 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

ECF 19 ¶¶ 5–6; Joint Additional Agreed Facts ("Additional Facts"), ECF 69 ¶ 44; Trial Ex. 130. Before his final assignment aboard the PACIFIC TRACKER, which began on June 1, 2020, he accepted a "permanent" able-bodied seaman position aboard the vessel. Trial Transcript at 113:19–114:13.

    3. Plaintiff completed an able seaman training course in December 2017, which included instruction on safe use of ladders. Agreed Facts, ECF 19 ¶ 7.

    4. Plaintiff participated in regular safety meetings aboard the PACIFIC TRACKER, including one on the safe use of portable ladders. *Id.* ¶ 9.

**B. The Defendant**

    5. Defendant United States is the owner of the SS PACIFIC TRACKER. Agreed Facts, ECF 19 ¶ 1. The SS PACIFIC TRACKER is a missile range instrumentation ship of the United States Maritime Administration. Additional Facts, ECF 69 ¶ 42.

    6. The PACIFIC TRACKER was operated on behalf of Defendant by Tote Services, Inc., pursuant to a ship management contract. Agreed Facts, ECF 19 ¶ 1.

    7. When docked in "Reduced Operating Status" at her permanent berth at Swan Island in Portland, Oregon, the Pacific Tracker has a crew of three deck department members, including a chief mate, a bosun, and an able seaman. Additional Facts, ECF 69 ¶ 43.

**C. The PACIFIC TRACKER's Mushroom Vent Restoration Project**

    8. The PACIFIC TRACKER has ten mushroom vents on its deck: four on the port side of the upper deck, four on the starboard side of the upper deck, and two additional vents on the lower deck. Additional Facts, ECF 69 ¶ 48. The upper vents are located next to a rail and ledge overlooking the lower deck, while the two vents on the lower deck are not located near the edge of the deck. *Id.*

9. Each mushroom vent has a fixed ladder built into one side of the vent. *Id.* ¶ 49. These ladders were installed in 2011 to provide access to a wheel valve located on top of the vent lid, which opens and closes the vent. *Id.*

10. In June 2020, the crew of the Pacific Tracker began working on a maintenance project on the mushroom vents. Agreed Facts, ECF 19 ¶ 10. This project involved removing the steel vent lid, removing rust, priming and painting both the vent and the lid, and then using the ship's crane to replace the vent lid. Trial Preservation Deposition of Leroy Reed ("Reed Depo."), Ex. 177 at 43:12–51:16, 55:15–57:22, 58:18–60:15. A crew member would then use a wrench to screw in twelve bolts to secure the vent lid to the top of the vent. Trial Transcript 117:19–118:4, 125:7–:14, 655:6–656:3. This work required ascending the fixed ladder to screw in bolts that could be reached from that ladder, as well as moving a portable ladder around the mushroom vent to reach other bolts not accessible from the fixed ladder. Trial Transcript 227:8–:21; Reed Depo., Ex. 177 at 44:25–46:24.

11. Chief Mate Jeff Royer directed Bosun Kevin Kellum and Plaintiff to perform the work on the vent maintenance project. Additional Facts, ECF 69 ¶¶ 43, 46. Chief Mate Royer left it up to Bosun Kellum to decide appropriate equipment and methods of work for the project. *Id.* ¶ 47.

12. As the bosun assigned to the vent maintenance project, Bosun Kellum was Plaintiff's supervisor, selected the equipment and methods of work, and taught him how to perform the work on the project. Agreed Facts, ECF 19 ¶ 11; Trial Transcript at 118:25–119:9. Plaintiff worked with Bosun Kellum from June 2, 2020, until July 1, 2020. Reed Depo., Ex. 177 at 26:20–27:1. While Bosun Kellum was on vacation from early July 2020, until August 9, 2020, ranking Able Seaman Leroy Reed filled in as bosun on the vent maintenance project. *Id.* Bosun Kellum

PAGE 4 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

returned to work on the day of the accident and worked with Plaintiff on the project. Additional Facts, ECF 69 ¶ 43.

13. In working on the mushroom vents on the upper deck, AB Reed typically tied off the portable ladder to secure it while in use. Reed Depo., Ex. 177 at 40:7–:15.

14. Resolving factual conflicts between Plaintiff's testimony, Bosun Kellum's testimony, and AB Reed's testimony, the Court finds Mr. Reed's testimony credible and persuasive. The Court finds that there was no established work practice of standing with one foot on the fixed ladder and one foot on the portable ladder while working on the vent top, or otherwise stepping from the fixed ladder to the portable ladder. Reed Depo., Ex. 177 at 76:1–:17. The Court also credits AB Reed's testimony that Bosun Kellum never warned AB Reed or Plaintiff not to side-step between ladders. *Id.* at 75:16–:25. The Court finds that the methods of work for this project simply did not include stepping between ladders.

15. The Court finds Plaintiff's testimony that side-stepping to the portable ladder was a routine practice aboard the vessel, *see* Trial Transcript at 122:16–:21, not credible. The Court makes this finding based on a review of the entire record, including AB Reed's testimony that he never side-stepped and never saw Plaintiff side-stepping, Reed Depo., Ex. 177 at 76:12–:17, Chief Mate Jeff Royer's testimony that he had never seen anyone engage in the practice aboard the vessel, Trial Preservation Deposition of Jeff Royer ("Royer Depo."), Ex. 179 at 56:20–:23, Bosun Kellum's testimony that he had attempted to side-step once and that he had never observed Plaintiff side-stepping, Trial Transcript at 253:16–54:14, 289:4–:14, and Captain John Betz's testimony that side-stepping is an inherently unsafe practice, *id.* at 668:15–669:2.

**D. The Accident**

16. On August 10, 2020, Plaintiff and Bosun Kellum worked on the No. 2 hold supply mushroom vent, located on the starboard side forward on the lower deck. Agreed Facts, ECF 19

PAGE 5 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

¶ 14; Additional Facts, ECF 69 ¶ 48. This was Bosun Kellum's first day of work following his vacation. Agreed Facts, ECF 19 ¶ 13.

17. The vent lid for the No. 2 hold supply mushroom vent had previously been removed to allow Plaintiff to wire-wheel, prime and paint it. Trial Transcript at 125:7–:14.

18. The work to be done on the lower vent that day involved using the ship's crane to lower the vent lid onto the vent, then screwing in bolts to secure the vent lid to the vent. Agreed Facts, ECF 19 ¶ 15.

19. The weather that day was sunny and dry. *Id.* ¶ 14. The Court finds that atmospheric conditions did not play any role in this accident.

20. On the day of the accident, the PACIFIC TRACKER was not at sea. She was docked at her permanent berth at the shipyard on Swan Island. Additional Facts, ECF 69 ¶ 43; Trial Transcript at 237:20–:22.

21. Both Bosun Kellum and Plaintiff signed the job hazard analysis ("JHA") logbook for August 10, 2020. Additional Facts, ECF 69 ¶ 52; Trial Transcript at 202:15–:22. The Court will not make a finding on whether a JHA was conducted that morning or the extent of any JHA. The Court finds that, even if a JHA were held, it did not address the risks of using fixed and portable ladders together. Trial Transcript at 127:10–13, 259:9–:17.

22. At some point in the morning, Bosun Kellum placed an A-frame portable ladder on the deck to the starboard side of the mushroom vent. Agreed Facts, ECF 19 ¶ 17. Bosun Kellum did not tie off or otherwise secure this ladder. Trial Transcript 271:8–:11.

23. The A-frame portable ladder was 5 feet, 8 inches high, with rungs spaced 12 inches apart. Trial Transcript at 652:2–:9. The third rung of the portable ladder was 3 feet above the deck. *Id.*

at 652:10–:12. On the day of the accident, neither Bosun Kellum nor Plaintiff worked at a height of greater than three feet off the deck, the third rung of the ladder. *Id.* at 682:2–:5.

24. Resolving factual conflicts between Plaintiff's testimony and Bosun Kellum's testimony, this Court finds more credible Bosun Kellum's testimony that the portable ladder was placed next to the vent in order to access the bolts that could not be reached from the fixed ladder. Trial Transcript at 270:16–271:11. This Court does not find that the portable ladder was placed in that location to enable Plaintiff or Bosun Kellum to step directly from the fixed ladder to the portable ladder. Rather, this Court finds that portable ladder was placed next to the mushroom vent to be moved around the large circular vent to reach the bolts on all sides of the vent lid.

25. Plaintiff used the ship's cranes to lift and place the vent lid on top of the mushroom vent, while Bosun Kellum acted as a spotter. Agreed Facts, ECF 19 ¶ 16.

26. Resolving factual conflicts between Plaintiff's testimony and Bosun Kellum's testimony, this Court will not credit Plaintiff's testimony that Bosun Kellum stood on both the fixed and portable ladders during this task. Trial Transcript at 129:20–:22. The Court does not find Plaintiff's testimony credible in light of its finding above that side-stepping was not a method of work aboard the vessel. The Court additionally finds that it would have been possible for Bosun Kellum to alternate between giving hand signals and manipulating the placement of the vent lid, or to give verbal directions while handling the vent lid, such that he could have performed this task while maintaining three points of contact on the fixed ladder only. Trial Transcript at 706:12–:21.

27. Bosun Kellum hand-tightened a pair of the bolts while standing on the fixed ladder. Trial Transcript at 207:24–208:24. He then descended the fixed ladder and tasked Plaintiff with threading and tightening the remaining bolts. *Id.* at 130:10–21.

PAGE 7 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

28. Plaintiff ascended the fixed ladder and stood on the third rung, 36 inches off the deck. Agreed Facts, ECF 19 ¶ 18. Plaintiff spent approximately thirty minutes placing and threading bolts. Trial Transcript at 131:6–:8.

29. While performing this work, Plaintiff used his right hand and a wrench to attempt to screw in a bolt, but was not successful in doing so. Agreed Facts, ECF 19 ¶¶ 20–21.

30. Bosun Kellum saw that Plaintiff was having difficulty screwing in one of the bolts and, at approximately 9:45 AM, told Plaintiff to stop working and go get coffee with him. *Id.* ¶ 21; Additional Facts, ECF 69 ¶ 55.

31. Plaintiff responded that it was too early for their morning coffee break, which was scheduled to begin at 10:00 AM, and that he wanted to secure one more bolt. Agreed Facts, ECF 19 ¶ 21.

32. The Court finds that Bosun Kellum did not hear Plaintiff's response. *See id.* No evidence was presented at trial to suggest that Bosun Kellum heard this response or said anything to Plaintiff in response. *See* Trial Transcript at 133:4–:5.

33. Bosun Kellum turned and started walking aft, away from the mushroom vent, before Plaintiff had descended the fixed ladder. Agreed Facts, ECF 19 ¶ 22.

34. Bosun Kellum walked at least six feet away from the fixed ladder before turning to look at Plaintiff. Trial Transcript at 283:9–:14, 213:22–:14–4.

35. At this time, Plaintiff attempted to place his right foot onto the third rung of the adjacent portable ladder. Agreed Facts, ECF 19 ¶ 24. The Court finds that Plaintiff performed this action to shift his weight in a way that would allow him exert greater leverage on the bolt that was difficult to screw in. Trial Transcript at 202:3–:6.

PAGE 8 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

36. At the time Plaintiff side-stepped, the ladder was not tied off or secured. *See* Trial Transcript at 214:11–:15.

37. As Plaintiff attempted to step his right foot over to the portable ladder, he lost his footing and caused the portable ladder to topple over. Agreed Facts, ECF 19 ¶ 24; Trial Transcript at 133:10–:12. After briefly hanging on to the fixed ladder with his left hand, Plaintiff fell to the deck on top of the portable ladder, landing on his right wrist and right knee. *Id.* at 133:15–:23.

38. Plaintiff was discharged from the vessel and flew home to southern California on August 13, 2020. Additional Facts, ECF 69 ¶ 62. Plaintiff has not returned to work, either as a seaman or in any capacity, since August 10, 2020. Agreed Facts, ECF 19 ¶¶ 34–35.

## CONCLUSIONS OF LAW

Based on the Court's factual findings, the Court reaches the following conclusions of law:

**A. Jurisdiction**

1. Because Plaintiff's injury occurred on the PACIFIC TRACKER, a public vessel of the United States, this Court has subject-matter jurisdiction over this action pursuant to the Public Vessels Act, 46 U.S.C. §§ 31101 et seq., which incorporates the Suits in Admiralty Act, 46 U.S.C. §§ 30901 et seq. This is an admiralty matter within the meaning of Federal Rule of Civil Procedure 9(h).

2. Venue is proper in the District of Oregon. 46 U.S.C. § 31104(a).

**B. Jones Act Negligence**

3. To prevail on a negligence claim under the Jones Act, 46 U.S.C. § 30104, a seaman must establish four elements by a preponderance of the evidence: (1) the plaintiff is a seaman; (2) breach of the employer's duty to provide a safe work environment; (3) the employer's notice of the unsafe condition; and (4) a causal link, however slight, between the breach and the

seaman's injury. *Ribitzki v. Canmar Reading & Bates, Ltd. P'ship*, 111 F.3d 658, 662 (9th Cir. 1997).

4. "The employer of a seaman owes the seaman a duty under the Jones Act to provide the seaman with a safe place to work." *Id.* at 662. The parties do not dispute that Plaintiff was a seaman at the time of the accident. Additional Facts, ECF 69 ¶ 41.

5. Defendant's duty of care is a duty of "ordinary prudence under the circumstances." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir. 1997) (en banc). "Negligence is the doing of something that a reasonably prudent person would not do, or the failure to do something that a reasonably prudent person would do, under the circumstances." Ninth Circuit Manual of Model Civil Jury Instructions No. 7.3.

6. This Court concludes, based on the evidence presented at trial, that Defendant did not breach its duty under the Jones Act to provide Plaintiff with a safe workplace.

7. This Court finds that Bosun Kellum did not breach his duty of care by telling Plaintiff to break for coffee and then turning away from Plaintiff while he was still standing on the fixed ladder. Descending three feet from the third rung of the fixed ladder to the deck is ordinary seaman's work with which Plaintiff was familiar from his prior work on the mushroom vent project. *See* Trial Transcript at 674:15–21; Royer Depo., Ex. 179 at 140:4–:12. Plaintiff was not working aloft at the time of the accident because he was never at any point working more than three feet off the deck. *See* Royer Depo., Ex. 179 at 24:2–:6; Trial Transcript at 682:2–683:19. Bosun Kellum was not required to directly supervise Plaintiff in performing that task.

8. The Court finds that Bosun Kellum's initial placement of the portable ladder adjacent to the fixed ladder did not breach his duty of care. This Court credited Bosun Kellum's testimony that the ladder was placed in this location to be used to reach the other bolts.

PAGE 10 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

9. The Court finds that Bosun Kellum's failure to tie off, secure, or hold the portable ladder was not a breach of his duty of care. A duty to tie off, hold, or otherwise secure the portable ladder, if any, would only arise once the ladder was being used for work. As the Court found above, Bosun Kellum did not place the ladder with the intent that he and Plaintiff would side-step to the ladder, but rather so that it could be used later in the day to screw in the bolts that could not be reached from the fixed ladder. It was not foreseeable that Plaintiff would side-step to the portable ladder at the time that he did.

10. The Court finds that Bosun Kellum's communications with Plaintiff did not breach the duty of care. No evidence was presented to suggest Bosun Kellum heard Plaintiff say that he wanted to screw in one more bolt or that Bosun Kellum had any reason to think Plaintiff was going to continue working. There was no reason that Plaintiff needed to screw in one more bolt before stopping work. Trial Transcript at 669:7–:22. Bosun Kellum was not obligated to follow up to ensure that Plaintiff understood his directive to stop work and get coffee with him.

11. The Court finds that the methods of work employed by Bosun Kellum and Tote Services did not breach the duty of care. The use of fixed and portable ladders was a safe method to screw in the bolts on top of the mushroom vent. *See* Trial Transcript at 504:13–:23, 663:21–664:10. Defendant's duty of care did not require using scaffolding or a safety ladder with a platform on the vent maintenance project. The fixed and portable ladders were reasonably fit for their intended uses.

12. The Court finds that the failure to have a JHA addressing mixed-ladder usage did not breach Defendant's duty of care. This Court found that there was no practice of mixed-ladder use, and finds that stepping from the fixed ladder to an unsecured portable ladder was an open

PAGE 11 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

and obvious danger that did not require a JHA. The ordinary use of ladders is routine seaman's work for which a JHA is not required. *See* Trial Transcript at 481:5–:13.

13. Because the Court concludes that Plaintiff has not shown that Defendant breached its duty of care, it does not reach the elements of notice and causation.

### C. Unseaworthiness Claim

14. An unseaworthiness claim has four elements: (1) seaman status; (2) an injury arising from the condition of the ship or its crew; (3) the unseaworthiness of that condition; and (4) proximate causation. *Ribitzki*, 111 F.3d at 664.

15. An unseaworthy condition may include a defective physical condition, a failure to properly maintain the ship, an unfit or insufficient crew, or—as relevant to this case—an improper method of work. *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971).

16. Plaintiff was a seaman at the time of the accident. Additional Facts, ECF 69 ¶ 41.

17. This Court finds that Plaintiff's injuries were caused by a fall from the fixed ladder to the deck, thus satisfying the second element of an unseaworthiness claim.

18. This Court finds that the work methods used on the vent restoration project were not unseaworthy. The Court found, in Finding No. 15 above, that there was no practice of stepping between ladders or straddling both ladders employed in the vent restoration project.

19. For the reasons provided above in the discussion of negligence, the Court finds that none of Plaintiff's alternative theories of negligence show there was an unseaworthy piece of equipment, condition, or method of work aboard the PACIFIC TRACKER.

20. Because the Court concludes that Plaintiff has not shown that the PACIFIC TRACKER was unseaworthy, it does not reach the element of causation.

## CONCLUSION

Based on the foregoing Findings of Fact and Conclusions of Law, the Court concludes that Defendant was not negligent under the Jones Act in its operation of the PACIFIC TRACKER and the PACIFIC TRACKER was seaworthy. The parties are ORDERED to jointly submit a form of judgment consistent with these Findings and Conclusions to the Court by March 31, 2025.

**IT IS SO ORDERED.**

DATED this 24th day of March, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge