# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAIME B. MERCED**, | Case No. 3:22-cv-01160-IM |
| Plaintiff, | **OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL AND TAXING IN PART DEFENDANT'S BILL OF COSTS** |
| v. | |
| **UNITED STATES OF AMERICA**, | |
| Defendant. | |

Edward M. Bull III & Kurt Micklow, Brodsky Micklow Bull & Weiss LLP, 955 Harbor Drive, Suite 130, San Diego, CA 92101, and Charles Robinowitz, 1211 SW Fifth Avenue, Suite 2323, Portland, OR 97204. Attorneys for Plaintiff.

Frank J. Anders & Susan F. Shapiro, Trial Attorneys, and Eric Kaufman-Cohen, Attorney in Charge, U.S. Department of Justice, Civil Division, Torts Branch, West Coast Office, 450 Golden Gate Avenue, Room 7-5395, San Francisco, CA 94102, and Susanne Luse, Assistant U.S. Attorney, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff Jaime Merced sued Defendant the United States of America, alleging that he fell

and was injured while working as a Jones Act seaman aboard a vessel owned by Defendant.

PAGE 1 – OPINION & ORDER ON POST-TRIAL MOTIONS

After a bench trial, this Court entered findings of fact and conclusions of law, ECF 72, and entered judgment in favor of Defendant on all claims, ECF 73. Following entry of judgment, Plaintiff moved for a new trial, ECF 76, arguing that undisputed evidence established Defendant's liability. Defendant responded, opposing Plaintiff's motion for a new trial, ECF 78, and Plaintiff replied, ECF 80. For the reasons below, this Court finds that Plaintiff has not identified any manifest errors of fact or law that would warrant a new trial. Plaintiff's motion for a new trial is denied.

Defendant filed a bill of costs under 28 U.S.C. § 1920, along with a supporting declaration. ECF 75. Plaintiff filed objections, arguing that costs should not be awarded against an indigent plaintiff such as himself, that the filing was untimely, and that several of Defendant's identified costs were unnecessary. ECF 77. For the reasons below, the Court finds that costs should not be awarded against Plaintiff because of Plaintiff's limited financial resources, the economic disparity between the parties, and the closeness of the issues in this case. This Court reduces Defendant's award to a nominal fee of $100.

## A. Plaintiff's Motion for a New Trial

Plaintiff moves for a new trial under Federal Rule of Civil Procedure 59(a)(1). Motion for New Trial ("Mot."), ECF 76. Plaintiff contends that several of his theories of liability rest on "clear and undisputed evidence," such that any defense verdict on these facts would be against the clear weight of the evidence. *Id.* at 8. Plaintiff alternatively asks this Court to amend its findings of fact and conclusions of law or make new ones to support a new judgment under Rule 59(a)(2). *Id.* at 7.

### 1. Legal standard

Rule 59(a)(1)(B) provides that after a court trial, a new trial may be granted "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."

PAGE 2 – OPINION & ORDER ON POST-TRIAL MOTIONS

These reasons include "(1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence." *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978) (per curiam).[1] A manifest error is one "that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Error*, Black's Law Dictionary (12th ed. 2024). The "burden of showing harmful error rests on the party seeking the new trial." *Boston Sci. Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1110 (N.D. Cal. 2008).

### 2. A new trial is unwarranted

Plaintiff identifies what he argues are three undisputed facts that require a verdict in his favor. Addressing each in turn, this Court finds that none of these amount to a manifest error of law or fact warranting a new trial.[2] "Post-trial motions under . . . Rule 59 are not to be used when a party is merely seeking to re-litigate a finding that was made during the course of trial." *FMD Restoration, Inc. v. Baistar Mechanical, Inc.*, 320 F.R.D. 320, 323 (D.D.C. 2017). This Court views Plaintiff's arguments as primarily seeking to relitigate questions that were fully argued at trial and addressed in this Court's Findings and Conclusions.

---

[1] Plaintiff's Motion cites *Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007), for the proposition that a new trial may be ordered when the ruling is "against the clear weight of the evidence." Mot., ECF 76 at 7. But *Molski* notes that the "clear weight of the evidence" standard only applies to a motion for a new trial following a jury's verdict. Rule 59(a) "establishes a different standard for bench trials," defined in *Brown*. *Molski*, 481 F.3d at 729 n.4 (citing *Brown*, 588 F.2d at 710). Courts in other Circuits have adopted the same "manifest error" standard as governing motions for a new trial following a bench trial. *See, e.g.*, *Ashraf-Hassan v. Embassy of France*, 185 F. Supp. 3d 94, 112 (D.D.C. 2016); *Chavez v. City of Albuquerque*, 640 F. Supp. 2d 1340, 1343 (D.N.M. 2008).

[2] This Court does not separately address the portions of Plaintiff's summary of evidence, Mot., ECF 76 at 3–7, that are not discussed in the argument section of his motion. The Court has reviewed that section of the Motion and finds that Plaintiff largely seeks to relitigate findings already made by this Court, and has not identified any manifest errors of fact or law.

First, Plaintiff points to the fact that Bosun Kellum walked away from the work site before Plaintiff had descended the ladder to the deck of the vessel. Joint Statement of Agreed Facts, ECF 19 ¶ 22. Plaintiff argues that this action must have been "unreasonable, careless and negligent." Mot., ECF 76 at 8. Plaintiff's argument rests on testimony that it would be a breach of the standard of care for a supervisor to walk away while a worker was still "aloft." Trial Transcript at 465:7–:13. This Court found that Plaintiff was not "aloft" at the time of the accident because Captain Betz testified that he was working at a height of three feet. Findings and Conclusions, ECF 72 at 6–7, Finding of Fact No. 23; Trial Transcript at 652:10–:12. The evidence at trial showed that the working-aloft policy only applied when working at heights above four feet. Trial Preservation Deposition of Jeff Royer, Ex. 179 at 114:16–:23. This Court therefore concluded that Bosun Kellum was not negligent in failing to directly supervise Plaintiff while he descended the ladder to the deck. Findings and Conclusions, ECF 72 at 10, Conclusion of Law No. 7. This Court finds no manifest error of fact or law in these findings and conclusions.

Next, Plaintiff contends that the methods of work used aboard required him "to work with only one hand in attempting to secure the bolts on the vent cover," which "made it foreseeable" that he would place a foot on the portable ladder to "use both hands on his work." Mot., ECF 76 at 8–9. This would be foreseeable if, as Plaintiff testified, the crew routinely stepped on both ladders while performing this work. Trial Transcript at 122:16–:21. But this Court did not credit Plaintiff's testimony on this point. Findings and Conclusions, ECF 72 at 5, Finding of Fact No. 15. Instead, this Court credited testimony from Bosun Reed, Chief Mate Royer, and Bosun Kellum that side-stepping was not an established practice aboard the vessel, and therefore found that "the methods of work for this project simply did not include stepping between ladders." *Id.* Finding of Fact No. 14. The parties agreed that Plaintiff was familiar with

the methods of work used in this project from his prior work on four or five of the mushroom vents, Additional Agreed Facts, ECF 69 ¶ 50, and this Court found that those methods of work did not include side-stepping, ECF 72 at 5, Finding of Fact No. 15. If placing a foot on the portable ladder was not necessary to complete the work on the prior mushroom vents, it would not have been foreseeable that Plaintiff would find it necessary to do so on the day of the accident. This Court identifies no manifest error of law or fact in these findings or conclusions.

Finally, Plaintiff argues that his expert testified that the standard of care for the work at issue in this case was to use scaffolding, and that Defendant's expert did not dispute this evidence. Mot., ECF 76 at 9. Plaintiff's expert also testified that there was nothing inherently unsafe about the use of the portable or fixed ladders, Trial Testimony at 504:13–:23, which this Court relied on in concluding that the "fixed and portable ladders were reasonably fit for their intended uses." Findings and Conclusions, ECF 75 at 11, Conclusion of Law No. 11. Scaffolding may be a safer method of work and may be used aboard some other vessels, but the applicable duty of care here is "ordinary prudence under the circumstances." *Id.*, Conclusion of Law No. 5 (quoting *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 339 (5th Cir. 1997) (en banc)). Pointing to a possible safer method of work does not establish a lack of ordinary prudence, much less the sort of manifest error of fact or law necessary for a new trial.

As evidenced by the above discussion, Plaintiff's objections were largely raised at trial and addressed in this Court's Findings of Fact and Conclusions of Law, ECF 72. This Court considered all the evidence presented at trial, weighed the credibility of the witnesses, and reached conclusions. This Court concludes its factual findings and legal conclusions are supported by the evidence adduced at trial. Plaintiff has not identified any manifest error of law

PAGE 5 – OPINION & ORDER ON POST-TRIAL MOTIONS

or fact to warrant a new trial or amendment of the Court's Findings and Conclusions. Plaintiff's

motion for a new trial is accordingly denied.

## B.  Defendant's Award of Costs

Defendant seeks an award of $45,865.36 in costs. ECF 75-1. As the prevailing party,

Defendant is presumptively entitled to an award of costs under Federal Rule of Civil Procedure

54(d)(1). Under the circumstances of this case, however, this Court finds that Plaintiff has

rebutted this presumption by presenting evidence of his limited financial resources. This Court

therefore awards only a nominal amount of costs to Defendant in the amount of $100.

### 1.  Legal standard

28 U.S.C. § 1920 provides that a "judge or clerk of any court of the United States may

tax" six enumerated categories of expenses. These "relatively minor, incidental expenses,"

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012), serve to "define the full extent of

a federal court's power to shift litigation costs absent express statutory authority to go further,"

*Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019) (citation omitted).

Rule 54(d)(1) creates a "presumption in favor of awarding costs to a prevailing party."

*Ass'n of Mex.-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc). The

losing party bears the burden "to demonstrate why the costs should not be awarded." *Stanley v.*

*Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999). Once the court determines that costs

should be awarded, it falls to the party seeking costs to itemize its costs with sufficient detail to

establish that they are taxable. *See In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1368 (Fed.

Cir. 2011) (applying Ninth Circuit law); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248 (10th

Cir. 2002); *see also* Local Rule 54-1(a) (requiring "detailed itemization of all claimed costs").

### 2. Indigence

Although Rule 54(d)(1) creates a presumption in favor of awarding costs, it also "vests in the district court discretion to refuse to award costs." *Ass'n of Mex.-Am. Educators*, 231 F.3d at 591. The Ninth Circuit has recognized a "plaintiff's limited financial resources" as an appropriate reason to deny costs, *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014), and has stated that costs should be denied when a plaintiff "would be rendered indigent should [he] be forced to pay" the amount assessed, *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1080 (9th Cir. 1999).

Plaintiff argues that awarding costs would be inequitable. Objections to Bill of Costs, ECF 77. Plaintiff states that this Court may rely on testimony from both himself and his wife at trial that his family struggles to get by on their limited income. *Id.* at 2. Defendant challenges the evidence of Plaintiff's indigency, noting a lack of testimony as to Plaintiff's assets or debts. Response to Objections ("Costs Resp."), ECF 79 at 3. Defendant also argues that Plaintiff could "earn $58,000/year right now as a merchant seaman," and that his own experts testified that he is physically able to work and "is capable of earning at least $35,000/year." *Id.* at 5. Defendant ascribes Plaintiff's financial situation primarily to his failure to search for work. *Id.*

This Court appreciates Defendant's point that Plaintiff's financial situation is, in part, of his own making. This Court is generally not inclined to decline to award costs when a plaintiff has failed to secure gainful employment despite being able to do so. *Cf. Escriba*, 743 F.3d at 1248 (considering a plaintiff's "efforts to secure steady employment" in assessing a costs award). Under the circumstances of this case, however, the evidence in the record demonstrates that an award of costs would be inequitable. This Court finds that Plaintiff has adequately rebutted the presumption in favor of awarding costs and declines to award Defendant's costs.

a. **Proof of indigency**

Before directly addressing whether the evidence shows Plaintiff is indigent, this Court addresses Defendant's argument that Plaintiff has failed to present adequate evidence to support his claim. Defendant contends that Plaintiff "has not met his burden to demonstrate that he is indigent." Costs Resp., ECF 79 at 2–3. This Court first clarifies that the inquiry is not whether Plaintiff is indigent, but "whether an award of costs might make [him] so." *Rivera v. NIBCO*, 701 F. Supp. 2d 1135, 1143 (E.D. Cal. 2010). A plaintiff thus need not be "completely indigent" for his limited financial resources to weigh against an award of costs. *Knox v. City of Fresno*, 208 F. Supp. 3d 1114, 1117 (E.D. Cal. 2016); *see Stanley*, 178 F.3d at 1080 (finding the district court abused its discretion in awarding substantial costs against a plaintiff of "modest means" because of "the possibility [the plaintiff] would be rendered indigent should she be forced to pay"). In the mine run of cases, current indigence and post-award indigence are likely similar questions. When the costs sought are substantial, however, as they are in this case, the distinction matters. *See, e.g.*, *Stanley* (considering cost award of $46,710.97); *cf., e.g.*, *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–46 (9th Cir. 2003) (declining to disturb taxation of $5,310.55 against plaintiff). Even if Plaintiff is not already indigent, it is not clear how he could pay the substantial award of costs that Defendant seeks.

On the merits of this objection, Defendant points out that Plaintiff has not submitted evidence of his assets or debts. Costs Resp., ECF 79 at 2–3. While some other circuits do require a party to produce "substantial documentation of a true inability to pay," *Chapman v. Al Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000), such as "affidavits, statements of assets and income, and a schedule of expenses," *Rossi v. City of Chicago*, 790 F.3d 729, 738 (7th Cir. 2015), the Ninth Circuit has never required the losing party to provide a "statement of assets and income and a schedule of expenses . . . to demonstrate indigency," *Cleveland v. The Behemoth*, No. 23-55108,

2024 WL 1926504, at *3 (9th Cir. May 2, 2024). "There are no hard and fast rules for assessing

a losing party's indigency or inability to pay; district courts should use their common sense in

making this determination." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 463–64 (3d Cir.

2000). This common-sense inquiry allows a court to infer an inability to pay from the economic

circumstances of the plaintiff. *See, e.g.*, *Mansourian v. Bd. of Regents*, 566 F. Supp. 2d 1168,

1171 (E.D. Cal. 2008). Plaintiff has provided enough detail, through testimony and evidence at

trial, to give this Court a sufficient understanding of his financial circumstances to determine

whether imposing costs would be inequitable. *See Powell v. Adlerhorst Int'l, Inc.*, No. 3:14-cv-

01827-MO, 2017 WL 1371269, at *2 (D. Or. Apr. 12, 2017) (finding that, while litigants are

"[t]ypically" required to supply "supporting financial information," the trial record was sufficient

to assess the plaintiff's financial status). The Court finds it unnecessary to review his credit card

statements, "rent checks, utility receipts, or grocery bills," Costs Resp., ECF 79 at 3, to

determine whether an award of costs in this case would be inequitable.

### b. Evidence in the record

This Court finds, based on the evidence at trial, that an award of costs would impose a

severe hardship on Plaintiff and his family. This Court heard testimony that Plaintiff is the father

of four children, three of whom are under the age of eighteen. Trial Transcript at 68:11–:19. The

Court also heard testimony from Plaintiff's wife, who makes approximately $3,000 a month

stocking shelves at Walmart for minimum wage. *Id.* at 89:1–90:5. Her wages and Plaintiff's

Social Security payments make up the family's income. *Id.* at 89:1–90:5, 95:2–:6. The evidence

presented at trial also showed that Plaintiff filed bankruptcy in 2019, *id.* at 72:11–:14, liquidated

his pension plan for a modest sum, *id.* at 90:7–:11, rents rather than owns a home, *id.* at 70:15–

:18, and spends little on discretionary purchases, *id.* at 90:19–:21. He briefly attended college in

the Philippines without receiving a degree, *id.* at 99:24–100:18, and primarily testified through

an interpreter, suggesting limited English proficiency and limited prospects for future

employment. While this evidence is not a full picture of Plaintiff's assets, nothing in the record

suggested he has other significant savings or investments.

Even accepting Defendant's argument that Plaintiff could be earning $35,000 annually,

that combined with his wife's income would only amount to $74,000 annually for a household of

five. That total is less than 50% of the annual area median income for San Diego County, where

Plaintiff resides, which the U.S. Department of Housing and Urban Development classifies as

"very low income." *See* Program Parameters & Rsch. Div., *FY 2025 Very Low-Income (50%)*

*Income Limits Calculation*, U.S. Dep't of Hous. & Urb. Dev., https://perma.cc/YZX2-XVCA

(archived May 13, 2025) (calculating the very low-income limit for a five-person household in

the San Diego-Chula Vista-Carlsbad metro area at $89,350).[3] Based on this evidence, this Court

finds that an award of $45,865.36 in costs—roughly fifteen months of what Defendant suggests

Plaintiff's income should be—would be inequitable. *See Escriba*, 743 F.3d at 1248 (suggesting

courts should not award costs that "exceed [the plaintiff's] average annual earnings").

### 3. Other factors

Although Plaintiff's Objections only raise the issue of indigency, ECF 77 at 2, this Court

also finds that two additional factors identified in *Escriba* also weigh against an award of costs

under the circumstances of this case. The first is that Plaintiff's limited financial resources, as

described above, stand in stark contrast to those of the United States.[4] *See Escriba*, 743 F.3d at

---

[3] Federal Rule of Evidence 201(c)(1) allows this Court to take judicial notice of official information published on a government agency's website. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

[4] It is not apparent to this Court how to compare the resources of Plaintiff, an individual, with the United States, a sovereign nation. The United States has the power to collect taxes and print banknotes, so all other parties will by definition have more limited financial resources. This Court does not suggest that costs may never be awarded in favor of the United States and does

1249 (holding that a court may consider the economic disparity between the parties in determining whether to award costs). The second is the "closeness and difficulty of the issues in the case." *Id.* at 1248. Although this case was not particularly complex, this Court denied in part Defendant's motion for summary judgment, finding that genuine issues of material fact remained for trial on Plaintiff's Jones Act negligence and unseaworthiness claims. Opinion & Order, ECF 44 at 5. Resolving this case ultimately required the careful evaluation of hundreds of exhibits and extensive testimony from both lay and expert witnesses over six days of trial. *See, e.g.*, *Draper v. Rosario*, 836 F.3d 1072, 1077 (9th Cir. 2016) (finding that the case was close where the plaintiff survived summary judgment and the case turned on "which competing account of events" the fact-finder believed). While Plaintiff ultimately did not succeed at trial, his case was not frivolous or meritless. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978) (cautioning district courts, in the attorney's fees context, not to "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable"). Both of these factors therefore weigh against awarding costs here.

Considering Plaintiff's limited financial resources, the economic disparity between the parties, and the closeness of the issues, this Court reduces Defendant's Bill of Costs to a nominal fee of $100.[5]

---

not give this consideration great weight. Nonetheless, the Ninth Circuit in *Association of Mexican-American Educators* upheld the district court's consideration of the economic disparity between the plaintiff organization and the State of California, *see* 231 F.3d at 592–93; *see also Draper v. Rosario*, 836 F.3d1072, 1089 (9th Cir. 2016) (making the same comparison), so this Court will treat the economic disparity between the parties as relevant here and finds that it weighs somewhat in favor of denying costs.

[5] Because this Court finds that these reasons are sufficient to justify denying the Bill of Costs, it does not reach Plaintiff's arguments that the amended Bill of Costs was untimely or that some of the costs requested by Defendant are unreasonable. *See* Objections, ECF 77 at 3, 7.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for New Trial, ECF 76, is DENIED.

Defendant's Bill of Costs, ECF 75-1, is awarded in the amount of $100.


**IT IS SO ORDERED.**

DATED this 21st day of May, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge
